## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PHYLLIS SANTIAGO O/B/O D.S.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-148** |
| **SOCIAL SECURITY ADMINISTRATION** | **SECTION "F" (3)** |

### REPORT AND RECOMMENDATION

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for review of the final decision of the Commissioner denying her minor son's claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA").   The matter has been fully briefed on cross motions for summary judgment and is ripe for review.   For the following reasons, IT IS RECOMMENDED that plaintiff's motion for summary judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

### I.    BACKGROUND

Plaintiff filed an application for SSI on behalf of claimant, her son, in March 2015, alleging a disability onset date of January 15, 2014. (Adm. Rec. at 167-172, 201).   Claimant alleged disability due to attention deficit/hyperactivity disorder ("ADHD").   (*Id.* at 201).   Claimant, born on October 12, 2004, was ten years old at the time of the application and nine years old as of the alleged disability onset date. (*Id.* at 208).

After the Commissioner denied plaintiff's application at the initial and reconsideration levels, plaintiff sought a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 124-29). The ALJ held the hearing on August 16, 2016.   (*Id.* at 40-59).   Plaintiff and claimant testified at the hearing.   (*Id.*).

On October 20, 2016, the ALJ issued a decision in which she found that claimant was not

disabled, denying his claim. (*Id.* at 17-34).   In the decision, the ALJ concluded that claimant has

the severe impairments of ADHD and oppositional-defiant disorder ("ODD"). (*Id.* at 20).

However, the ALJ held that claimant does not have an impairment or a combination of impairments

that meets or medically equals a listed impairment in Appendix 1 under the regulations.   (*Id.* at

20-33-33).   The ALJ concluded that claimant has a less than marked limitation in acquiring and

using information, attending and completing tasks, and caring for himself. (*Id.* at 27-29, 31-32).

She also concluded that claimant has a marked limitation in interacting and relating with others

but no limitation in moving about and manipulating objects and health and physical well-being.

(*Id.* at 29-33). In short, the ALJ concluded that claimant has no extreme limitation in any of the

domains of childhood functioning.   She also determined that claimant had no past work history,

as he was in the fourth grade at the time of the application.   (*Id.* at 27-33, 204).

Plaintiff asked the Appeals Council to review the ALJ's conclusion that claimant is not

disabled.   (*Id.* at 9-10).   On October 31, 2017, the Appeals Council denied plaintiff's request.

(*Id.* at 1-6). Plaintiff then timely filed this civil action.

## II.   STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there

is "substantial evidence" in the record, as a whole, to support the final decision of the

Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal

standards to evaluate the evidence.   *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496

(5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d

243, 245 (5th Cir.1991).   If the Commissioner's findings are supported by substantial evidence,

this Court must affirm them.   *Martinez*, 64 F.3d at 173.

2

"Substantial evidence" is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart,* 309 F.3d 267, 272 (5th Cir. 2002).   It is more than a scintilla, but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993).   A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision.   *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner.   *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts.   *Carey,* 230 F.3d at 135.   Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive.   *Ripley*, 67 F.3d at 555.   Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.   *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

## III.    ENTITLEMENT TO BENEFITS UNDER THE ACT

A child is entitled to disability benefits if he or she has a severe medically determinable physical or mental impairment or combination of impairments that cause marked and severe functional limitations, and that can be expected to result in death or that has lasted or can be

3

expected to last for a continuous period of not less than 12 months. 20 C.F.R. §§ 416.906, 416.924. The ALJ employs the following three-step sequential evaluation process in evaluating childhood disability cases: (1) Is the child engaged in substantial gainful activity?; (2) Does the child have a severe impairment or combination of impairments?; and (3) Does the severe impairment(s) meet, medically equal, or functionally equal the severity of any impairment listed in Pt. 404, Subpt. P, App. 1 ("the listings"). 20 C.F.R. § 416.924(a)-(d).

To evaluate functional equivalence at step three, the Commissioner considers how a child functions in her activities in terms of six domains of functioning. 20 C.F.R. § 416.926a(b)(1). The six domains include: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1), (g)-(l). Functional equivalence means that the impairment is of listing-level severity and results in "marked" limitations in two of the six domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a). A "marked" limitation in a domain is when an impairment interferes seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926(e)(2). An "extreme" limitation interferes very seriously with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926(e)(3).

## IV.    ISSUES ON APPEAL

There are two issues on appeal:

(1)    Whether substantial evidence supports the ALJ's consideration of claimant's alleged impairment of autism.

(2)    Whether the ALJ gave proper weight to claimant's medical records from the Center of Hope.

## V.    ANALYSIS

### 1.    Whether substantial evidence supports the ALJ's consideration of claimant's alleged impairment of autism.

While plaintiff recognizes that the ALJ concluded that claimant has the severe impairments of ADHD and ODD, she argues that the ALJ ignored plaintiff's testimony at the oral hearing concerning autism and the Center of Hope's psychiatric records, which diagnosed claimant with F84.0 Autism Spectrum Disorder, F 90.2 ADHD, and F34.2 DMDD.[1] The Court concludes that plaintiff's arguments lack merit.

The Court finds that the ALJ properly evaluated all of claimant's medically-determinable impairments, both singly and in combination. After thoroughly discussing all of the medical evidence of record, the ALJ found that claimant has the severe impairments of ADHD and ODD. (Adm. Rec. at 20).

The ALJ noted that, during the hearing, plaintiff testified that, in addition to ADHD and ODD, claimant was "on the autism spectrum," and his impairments were equal to Listing 112.10, the Listing for Autism Spectrum Disorder. (*Id.* at 22, 46); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.10. Ultimately, the ALJ stated that she had "reviewed the entire record of this case and [found] no evidence establishing that the claimant has an autistic or developmental disorder." (*Id.* at 22). For the following reasons, substantial evidence supports this determination.

The word "autism" itself appears only once in the medical evidence of record, of which

---

[1] There is a dispute in the record as to the abbreviation DMDD.  Plaintiff appears to intimate that DMDD stands for "major depressive disorder," but the associative diagnostic code F34.2 reveals that it is actually "disruptive mood dysregulation disorder," defined as a childhood condition of extreme irritability, anger, and frequent, intense temper outbursts. *See* https://www.nimh.nih.gov/health/topics/ disruptive-mood-dysregulation-disorder-dmdd/disruptive-mood-dysregulation-disorder.shtml (last checked on November 7, 2018).

there are over 200 pages, and plaintiff herself testified only once at the oral hearing – with no citation to any medical evidence – that claimant was diagnosed with autism. (*Id.* at 26, 50). The word "autism" appears in a July 2016 check-the-box functional assessment form completed by a "case manager" with the Center of Hope. (*Id.* at 26-27, 509). The abbreviation "ASD" (which, for the benefit of the doubt, the Court will consider as "autism spectral disorder") and "DMDD" also appear on each of Dr. Cochran's[2] five clinical records dated between January 26, 2016 and May 17, 2016. (*Id.* at 514-518). Those are the word's and the abbreviation's only mention in the record. Cochran provides no discussion of the terms on which he based such a diagnosis, and no assessment or in-depth diagnostic notes of claimant having either autism, autism spectrum disorder, or disruptive mood dysregulation disorder. (*Id.* at 514-518). Plaintiff argues that the ALJ failed to consider Cochran's records from Center of Hope and the check-the-box form by the case manager. However, the ALJ specifically considered them but accorded them little weight, especially that of the case manager because it consisted of rote check-the-box responses that provide no background techniques to diagnose or to assess autism or ASD. (*Id.* at 26-27).[3] In

---

[2] Cochran is a treating physician at the Center of Hope.

[3] The ALJ was wholly entitled to give little or no weight to these medical assessments. The case manager's assessment was no more than a form on which the case manager checked "NONE," "MILD," "MODERATE," "MARKED," or "EXTREME" as claimant's limitation in each field of functioning. The case manager provides no reason why s/he circled each box under each limitation except for the last page, which only seeks responses to generic questions. It is well-established law that the ALJ is entitled to accord little or even no weight to similar "check-the-box" forms. *Rollins v. Astrue*, 464 F. Appx. 353, 357 n.5 (5th Cir. 2012) (noting that "check-the-box" forms without additional explanations might be given less weight but reserving that determination for the ALJ); *Foster v. Astrue*, 410 F. Appx. 831, 833 (5th Cir. 2011) (finding good cause to assign little weight to a treating physician's questionnaire opinion "due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examination . . ."); *Nguyen v. Colvin*, No. 4:13-CV-2957, 2015 WL 222328, at *9 (S.D. Tex. Jan. 14, 2015) (finding a treating physician's unsupported, check-the-box questionnaire regarding disability typifies the "brief and conclusory" statements that an ALJ may disregard under the good-cause exception to the treating-physician rule); *Luckey v. Colvin*, No. 4:14-cv-594-CAN, 2016 WL 429962, at *7 (E.D. Tex. Feb. 4, 2016) ("medical opinions expressed via "check-the-box" forms (such as portions of Dr. Stuart's questionnaire) without additional explanation may be given less weight by the Commissioner in making its disability determinations.").

short, plaintiff fails to point to evidence that the ALJ actually failed to consider.

The Court takes this opportunity in passing to comment on Cochran's notes that mention "ASD" in passing, notes which are very troubling in their reliability.   While the Court recognizes that Cochran's notes are nigh indecipherable, what this Court can discern is that ASD is categorized under "Work/Learning Progress."   (*Id.* at 514-18).   There is no reason given throughout the notes as to why ASD might be mentioned there or what led Cochran to such a diagnosis.   Indeed, ASD is not listed under "Clinical Summary/Plan," as if no one – including Cochran himself – thought it important enough to have a treatment plan for a serious disorder such as ASD going forward. All of this, taken *in globo*, renders Cochran's notes fallible, and the ALJ was entitled to accord them the little weight that she did.

Plaintiff further contends that the ALJ failed to consider claimant's alleged autism under Listing 112.08. However, Listing 112.08 is the listing for personality and impulse control disorders, and the ALJ specifically considered it. (*Id.* at 22-24); s*ee* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.08.

This is not claimant's first time at the rodeo. Claimant's conditions have been evaluated many times, in part due to plaintiff's two previous applications for disability benefits on behalf of claimant. (Adm. Rec. at 17, 63-77, 81-97). In the medical records of evidence, no treatment provider (other than the mentions by Cochran) has assessed claimant with autism. In a psychological evaluation conducted in 2013 by Scuddy Fontenelle, Ph.D., he specifically states that claimant "shows no evidence of childhood autism." (*Id.* at 348). The Court recognizes that plaintiff correctly notes that the term "ASD" appears in the five records from Cochran, and in the check-the-box form completed by a case manager. (*Id.* at 509, 514-518). However, the simple fact

of the matter is that claimant has never been diagnosed with autism in any of the psychological assessments that he has undergone, in his school records, or in his medical records.

The ALJ's analysis reveals a thorough consideration of the medical evidence and an appropriate assessment of claimant's impairments. It is axiomatic that the final responsibility for the determination of an individual's residual functional capacity and the ultimate question of whether an individual is "disabled" under the Act are issues reserved to the Commissioner. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (finding that the ALJ is responsible for determining the residual functional capacity). The lack of evidence to support a diagnosis of autism here weighs in favor of the ALJ's ultimate conclusion.

### 2.    Whether the ALJ gave proper weight to claimant's medical records from the Center of Hope.

Plaintiff next argues that the ALJ failed to give proper weight to "the Center for Hope treating physician." The Court presumes that this is a reference to Cochran. As noted above, claimant saw Cochran on five occasions between January 26, 2016, and May 17, 2016. (Adm. Rec. at 514-18). However, in her argument, plaintiff does not cite the Court to these records. Instead, she cites a form completed by a Center for Hope case manager. (*Id.* at 509-513). The Court's review of the ALJ's opinion reveals that she specifically considered this report, yet gave little weight to this check-the-box form completed by a case manager – who saw claimant only once and who was not a treating physician. (*Id.* at 26-27).

As the ALJ properly noted, the form completed by the case manager indicates that claimant's impairments caused "extreme" limitations in two functional domains (attending and completing tasks and interacting and relating with other) and "marked" limitation in two functional domains (acquiring and using information and caring for yourself). (*Id.* at 26, 510-511). The ALJ

8

noted that there was no evidence that the case manager met with claimant on a consistent basis or was directly involved in managing his care. (*Id.* at 26-27). Rather, it was Cochran who consistently treated claimant during 2016. (*Id.* at 27, 514-18). This Court has adequately addressed Cochran's "diagnoses" above.

In addition, the ALJ found that the range of limitations described in the case manager's form was inconsistent with the degree of limitations observed by claimant's teacher and co-teacher in the classroom setting. (*Id.* at 27, 233-240, 242-251). In contrast to the case manager – who saw claimant only once on July 12, 2016 (*id.* at 514), claimant's teacher observed him on a day-to-day basis for six months.  (*Id.* at 233).  Claimant's teacher noticed no limitations in acquiring and using information, moving about and manipulating objects, and noticed no problems with claimant's health and well-being.  (*Id.* at 234, 237, 239).  And while the teacher noticed problems in the other areas of functioning, claimant received high marks in attending and completing tasks, only receiving two "obvious problems" and one "serious" problem out of 13 areas.  (*Id.* at 235). And while claimant received two "obvious problems," two "serious problems," and one "very serious problem" (out of 13 areas of functioning) in interacting and relating with others, the teacher noted that this rating was based almost exclusively on tantrums thrown by claimant in the classroom and his impatience at not being responded to immediately.  (*Id.* at 236).  And although claimant received several low marks in caring for himself or herself, the comments by the teacher reflect once again that this related to claimant's tantrums.  (*Id.* at 238).  These marks – by a teacher who observed him for six months on a daily basis – are much more in line with the ALJ's "less than marked" and "marked" limitations than to the "extreme" limitations imposed by the case manager who observed him only once. The ALJ properly opted to provide greater weight to the

evidence and information provided by the teacher and co-teacher as they had regular and consistent contact with claimant before they completed their functional questionnaires. (*Id.* at 27).

It is well-established law that an ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The Court finds that plaintiff raises no error, reversible or otherwise. Fifth Circuit law is well-established that the ALJ is entitled to determine the credibility of the examining physicians and medical experts and weigh their opinions accordingly. *See Greenspan*, 38 F.3d at 237. Here, the ALJ properly explained the weight that she gave to each medical opinion of record and her reasons for doing so. Plaintiff's argument to the contrary lacks merit.

## VI.    CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that plaintiff's Motion for Summary Judgment be DENIED, the Commissioner's cross-motion be GRANTED, and plaintiff's case be DISMISSED WITH PREJUDICE.

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report.    28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error.    *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 6th day of December, 2018.

10

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**